IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

STEVEN HOLMES,
Individually, on behalf of himself
and on behalf of others similarly
situated                                                                    PLAINTIFF

v.                              Case No. 1:23-cv-01110

AMERCABLE CO.,
d/b/a NEXANS
AMERCABLE, INC.                                                            DEFENDANT

## ORDER

Before the Court is a Motion to Certify Class filed by Plaintiff Steven Holmes ("Plaintiff").

(ECF No. 15).  Defendant AmerCable Co. ("Defendant") has responded.  (ECF No. 15).  The Court

finds the matter ripe for consideration.

## I. BACKGROUND

On December 15, 2023, Plaintiff filed this action, seeking relief pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.  Plaintiff alleges he was formerly employed by

Defendant, a cable products and solutions company, as a lead processing employee and that

Defendant failed to pay him—and others similarly situated—overtime compensation for time spent

donning their lead protective gear.  Plaintiff's Complaint indicates that he brings a claim for

violation of FLSA on behalf of himself and all others similarly situated.

In the instant motion, Plaintiff asks the Court to certify, pursuant to the FLSA, the following

collective: "All current and former hourly-paid, personal protection equipment ("PPE") equipped

lead processing employees who worked at AmerCable Corporation's facility in El Dorado,

Arkansas any time from December 19, 2020, to the present."  (ECF No. 15-2, at 1).  Plaintiff also

requests that: (1) the Court permit this case to proceed as an FLSA collective action with the

proposed class; (2) Defendant be directed to provide a list of last-known names, email addresses, mailing addresses, and telephone numbers for all putative collective who performed similar duties for Defendant from December 19, 2020, to the present; (3) notice be prominently posted by Defendant at their El Dorado facility where the potential collective members work, attached to current hourly-paid employees' next-scheduled paycheck, and mailed to the hourly-paid employees; and (4) deeming opt-in plaintiffs' consent forms to be "filed" on the postmarked date. (ECF No. 15-1, at 2).

Defendant opposes this certification because it alleges "Plaintiff cannot establish that Plaintiff and potential opt-in plaintiffs had the same job titles and were subject to the same policies and practices established in the same manner, such that Plaintiff and potential opt-in plaintiffs are similarly situated." (ECF No. 16, at 2). Further, Defendant argues that if conditional certification is granted, Plaintiff's proposed notice procedures must be modified. *Id*.

## II. DISCUSSION

The Court must first determine whether conditional certification of the proposed collective is proper under the FLSA. Next, if the Court finds that conditional certification is appropriate, the Court must determine the correct means of providing notice to potential opt-in plaintiffs and approve the procedure by which potential collective members may opt-in.

### A. Conditional Certification Standard

Because Plaintiff brings a collective action pursuant to the FLSA, he must use the opt-in mechanism under 29 U.S.C. § 216(b) for joining members of the proposed collective as opposed to the opt-out procedures set forth in Federal Rule of Civil Procedure 23. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 939 (W.D. Ark. 2007). Under the FLSA, an action may be brought "by any one or more employees for and on behalf of himself or themselves and other

employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought under section 216(b) are "intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Resendiz-Ramirez*, 515 F. Supp. 2d at 940 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

"Ultimately, certification of a collective action will depend on whether the named plaintiffs are similarly situated to the [collective members]." *Murray v. Silver Dollar Cabaret, Inc.*, No. 5:15-cv-5177, 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017). Section 216(b) does not provide a standard for courts to utilize when determining whether the plaintiff and the collective members are "similarly situated," and the Eighth Circuit has not yet enunciated a standard. *Id.* However, the prevailing approach within the Eighth Circuit for collective action certification under § 216(b) is the two-step process set forth in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). *Id.* (citing *Resendiz-Ramirez*, 515 F. Supp. 2d at 940).

The two-stage process for collective-action certification is divided into: (1) the notice stage; and (2) the opt-in or merits stage. *Resendiz-Ramirez*, 515 F. Supp. 2d at 941. During the notice stage, the Court decides—usually based only on the pleadings and affidavits that have been submitted—whether notice should be given to potential plaintiffs. *Mooney*, 54 F.3d at 1213. If the Court allows for notification, the Court typically creates a conditional certification of a representative collective and allows notice to be sent to the potential opt-in plaintiffs. *Id.* at 1214.

At the second stage of the certification process, the Court must decide whether the action should be maintained through trial. *Resendiz-Ramirez*, 515 F. Supp. 2d at 940. Typically, the second stage is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete. *Id.* If the Court decides to decertify the collective, the opt-in

plaintiffs are dismissed from the suit without prejudice and the case proceeds only for the collective

representatives in their individual capacities. *Id.*

This case is presently at the first stage of the two-stage certification process. At this initial

stage, the Court does not make findings on legal issues or focus on whether there has been an

actual violation of the law. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106-07

(10th Cir. 2001). Further, at this stage, the Court does not make credibility determinations or

resolve contradictory evidence presented by the parties. *See Grayson v. K Mart Corp.*, 79 F.3d

1086, 1099 n.17 (11th Cir. 1996). Instead, the Court determines whether, under the lenient

standard of the notice stage, the named plaintiff, through pleadings and affidavits, has

demonstrated that he is "similarly situated" to the potential collective members. *See* 29 U.S.C.

§ 216(b); *Thiessen*, 267 F.3d at 1106-07.

Although the FLSA does not define the term "similarly situated," it typically requires a

showing that the plaintiff and potential collective members were victims of a common decision,

policy, or plan of the employer that affected all collective members in a similar fashion. *See*

*Thiessen,* 267 F.3d at 1106-08; *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D.

Mo. 2007). Further, the "similarly situated" determination requires only a modest factual showing

and does not require the plaintiff and the potential collective members to show that they are

identically situated. *See Harris v. Express Courier Int'l, Inc.*, No. 5:16-CV-05033, 2016 WL

5030371, at *3 (W.D. Ark. Sept. 19, 2016); *Kautsch*, 504 F. Supp. 2d at 689-90. This is not an

onerous burden, but the plaintiff nonetheless must show "some identifiable facts or legal nexus . . .

bind[ing] the claims so that hearing the cases together promotes judicial efficiency." *Murray*, 2017

WL 514323, at *2 (internal citation omitted). District courts within the Eighth Circuit consider a

variety of factors when determining whether the plaintiff and proposed collective members are "similarly situated" at the notice stage, including the following:

> (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker[;] and (5) the extent to which the acts constituting the alleged violations are similar.

*Harris*, 2016 WL 5030371, at *3.

### B. Conditional Certification in the Present Case

In support of his Motion to Certify Class, Plaintiff submitted a declaration stating that he was employed as an hourly-paid PPE lead processing employee at Defendant's production facility located in El Dorado, Arkansas from February 2022 to October 2023. (ECF No. 15-4, at 1). During that time, Plaintiff was paid at an hourly rate for his work. *Id*. Plaintiff states he ordinarily would work at least forty (40) hours but would be routinely scheduled to work more than forty (40) hours per week. *Id*. at 2. Plaintiff also states that he would have to spend ten (10) to fifteen (15) minutes of total time before his scheduled shift donning his PPE and working without being clocked-in to the timekeeping system.[1] *Id*. Plaintiff alleges that Defendant and its managers were aware of this policy of working without being clocked-in. *Id*. Further, Plaintiff states both he and other similarly situated co-workers worked more than forty (40) hours per week without receiving any overtime pay for the hours they worked in excess of forty (40) hours because of this practice. *Id*. Plaintiff also presented two similar declarations from potential opt-in plaintiffs alleging that they were subjected to the same policy and circumstances. (ECF No. 15-5; ECF No. 15-6).

---

[1] Plaintiff states in the instant motion that his job duties required daily exposure to dangerous amounts of lead and because of this exposure he and others similar situated were required to wear lead protective coveralls (similar to a jump suit), goggles or safety glasses, protective gloves, and approved footwear. (ECF No. 15-1, at 2-3).

Defendant disputes that conditional certification should be granted. (ECF No. 16, at 2). Defendant argues that Plaintiff's motion should be denied because Plaintiff has failed to identify a specific proposed collective. *Id*. at 4. However, Defendant's argument that Plaintiff has failed to identify a specific proposed collective is unpersuasive. Defendant cites no case law in support of this argument and the Court can find no case law denying conditional certification because Plaintiff's motion and briefings contain minor variations of his proposed class. Further, the Court finds that Plaintiff's proposed collective definition can plainly be discerned from his pleadings because Plaintiff consistently references similar elements of the collective definition throughout the pleadings.[2]

### 1. Similarly Situated

Defendant also argues that Plaintiff has failed to show the proposed collective is similarly situated. *Id*. Defendant argues that Plaintiff has presented inadmissible evidence and made false statements. Defendant provides a declaration from its Human Resources Director stating that no policies exist to require its employees to work while not clocked-in. (ECF No. 16-1). However, Defendant's arguments are merit-based and at the conditional certification stage of a FLSA case these arguments are inappropriate. *See Israsena v. Chalak M&M AR1 LLC*, No. 4:15-cv-0038-JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015) (Finding that arguments about the merits of a plaintiff's claims and the impropriety of individualized inquires in collective actions are inappropriate for consideration at the conditional certification stage).

At this stage the Court is not making credibility determinations or resolving contradictory evidence. The Court is simply determining whether, based on pleadings and affidavits, Plaintiff is similarly situated with proposed collective members. Plaintiff and the two supporting declarations

---

[2]The Court notes that Plaintiff's Proposed Notice (ECF No. 15-2, at 1) contains a clear version of the proposed class definition.

allege they suffered from a policy sanctioned by Defendant that routinely required them to spend ten (10) to fifteen (15) minutes every workday donning their lead protective gear before clocking-in for work.  While Defendant also argues Plaintiff and potential collective members lack the same title, the Court is unpersuaded by this argument.  Plaintiff is required to make a modest factual showing that he is similarly situated, not identically situated.

Upon review of the pleadings and declarations, the Court is satisfied that Plaintiff has made a modest showing that he and other lead processing employees, while employed by Defendant at their facility in El Dorado, Arkansas during the relevant period, were subjected to a common policy which deprived them of overtime.  **Accordingly, this case will be conditionally certified as a collective action**.

### 2. Modifications to the Collective Definition

Defendant argues that if the Court grants Plaintiff's motion for conditional certification the collective definition should be modified.  Defendant requests two modifications of the collective definition: (1) that the time limit for the applicable period be limited to Plaintiff's period of employment; and (2) that "lead processing employees" be changed to "lead press operators who worked more than forty (40) hours a week."  (ECF No. 16, 6-7).  Defendant's proposed collective definition would read "All hourly-paid Lead Press Operators employed by Amercable at the Amercable El Dorado, Arkansas facility who worked more than 40 hours a week from February 2022 until October 2023."  *Id*. at 7.  Plaintiff has offered no reply to Defendant's requested modifications.

Defendant's first requested modification is reasonable.  The Court has previously ruled that it is appropriate to limit the time period applicable to the proposed collective to the period of Plaintiff's employment.  *Phillips v. Oaklawn Jockey Club, Inc.*, No. 6:23-CV-6055, 2024 WL

69959, at *3 (W.D. Ark. Jan. 5, 2024).  Thus, the Court will limit Plaintiff's collective definition to the time he was employed with Defendant from February 2022 until October 2023.

Defendant's second requested modification is partially reasonable.  The Court declines to modify "lead processing employees" to "lead press operators" because it appears to the Court that this change would narrow the potential collective members.  "At this stage in the litigation, judicial economy is served by conditionally certifying a larger, more inclusive class." *Cruthis v. Vision's*, No. 4:12-cv-244-KGB, 2013 WL 4028523, at *5 (E.D. Ark. Aug. 7, 2013).  However, the Court does agree that for the sake of clarification Plaintiff's collective definition should reflect potential collective members who regularly worked over forty (40) hours per week.  Thus, Plaintiff's collective definition shall read "**All current and former hourly-paid, personal protection equipment ("PPE") equipped lead processing employees who regularly worked more than forty (40) hours per week that worked at AmerCable Corporation's facility in El Dorado, Arkansas any time from February 2022 until October 2023**."

### 3. Opt-In Period

Plaintiff requests a ninety (90) day opt-in period, arguing that this time limit is consistent with established practice under the FLSA.  Defendant objects, arguing that ninety (90) days is excessive given the relatively small pool of potential collective members.  Defendant argues that sixty (60) days after it provides the contact information should be sufficient.

In *Thompson v. Spa City Steaks, Inc.*, No. 6:17-CV-6055, 2017 WL 11495451, at *6 (W.D. Ark. Nov. 7, 2017), like in the case at bar, Plaintiff requested ninety (90) days and Defendant requested sixty (60) days.  The Court found that sixty (60) days should be sufficient because it was reasonable and would still allow Plaintiff sufficient time to locate potential collective members. *Id*; s*ee also Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-CV-00026,

2017 WL 821656, at *10 (S.D. Iowa Jan. 10, 2017) (noting "that district courts in [the Eighth Circuit] often find opt-in windows of sixty days to be reasonable if the parties attempt notice on multiple occasions (e.g., when the initial notice mailing is followed by a reminder) or multiple means (e.g., mail and email or a conspicuously placed posting in the workplace of currently employed potential opt-in plaintiffs).").  The Court has provided that Plaintiff may distribute the Notice and Consent forms via U.S. Mail and email addresses.  Further, the Court agrees with Defendant that there should be a relatively small pool of potential collective members.  Thus, the Court finds that sixty (60) days from when Defendant provides the contact information should be enough time to distribute the Notice and Consent forms and file any signed Consent forms with the Court.

Plaintiff requests that the notices be deemed filed on the date they are postmarked. Defendant disagrees.  Defendant argues that "the consents must be filed with the Court and Plaintiff has not demonstrated or cited any case law supporting the request that consents should be deemed filed on the date they are postmarked."[3]  (ECF No. 16, at 14).  Upon consideration, the Court finds that the Consent forms should be considered filed on the date they are postmarked. *See Li v. New Asia Chinese Rest. Wan Da Inc.*, No. CV 22-1665 WMW/BRT, 2022 WL 3700152, at *2 (D. Minn. Aug. 26, 2022) (finding that "[e]ach opt-in plaintiff's consent form shall be deemed 'filed' with the Court on the date the form is postmarked or stamped as received).

### C. Content of the Notice Form

Once the Court has determined that potential opt-in plaintiffs may be similarly situated for the purposes of authorizing notice, the Court certifies the collective action and the plaintiffs send

---

[3]The Court notes that Defendant cites to *Adkinson*, 2019 WL 5213957, at *12.  However, the Court can find nothing at the cited page or in the case that supports Defendant's position that the consent forms should not be deemed filed on the date they are postmarked.

court-approved notice to potential collective members. *See Kautsch*, 504 F. Supp. 2d at 689-90. "A district court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *See, e.g.*, *Murray*, 2017 WL 514323, at *4.

The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. The content and method of disseminating notice to potential collective members must be approved by the district court. *Littlefield v. Dealer Warranty Servs.*, LLC, 679 F. Supp. 2d 1014, 1018 (E.D. Mo. 2010). Although reasonable amendments to the proposed notice are permissible, the Court will not allow amendments that are "unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).

Plaintiff asks the Court to: (1) approve the language of their proposed collective action Notice and Consent forms; (2) direct Defendants to supply the names, addresses and other contact information of all potential collective members; (3) authorize that the Notice and Consent forms (ECF No. 15-2; ECF No. 15-3) be emailed and mailed by counsel for Plaintiff to all potential collective members; (4) set a ninety (90) day period to the potential collective members to file their consent forms with the Court; (5) order Defendant to post the Notice form internally and prominently on any time clocks or computers used by Defendant's employees or alternatively on bulletin boards where job notices are posted; (6) Defendant be ordered to include the Notice form with all potential collective members' regularly-scheduled paychecks or stubs; and (7) Defendant be ordered to produce a mailing list that contains the last known physical addresses, last known

email addresses, dates of employment, social security numbers, and last known telephone numbers of all current and former potential collective members.

The Court will begin with the aspects of Plaintiff's proposed notice plan to which Defendant does not object. The general form and language of the proposed Notice form is approved, except for specific objected-to portions, which the Court will address below.

### 1. Header

Defendant requests the header be amended to correct a typo in the case number. The Court finds this proposed change to be reasonable. The header shall be changed from "1:23-cv-0110-SOH" to "Case No. 1:23-cv-01110" to accurately reflect the case number.

Defendant requests that the "**TO:**" line be changed to read "All hourly-paid Lead Press Operators employed by Amercable at the Amercable El Dorado, Arkansas facility who worked more than 40 hours a week from February 2022 until October 2023." In light of the Court's findings concerning the collective definition, this line shall be changed to "All current and former hourly-paid, personal protection equipment ("PPE") equipped lead processing employees who regularly worked more than forty (40) hours per week that worked at AmerCable Corporation's facility in El Dorado, Arkansas any time from February 2022 until October 2023."

Defendant requests the following language under the "**TO:**" be removed because it is misleading: "**A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER**." The Court finds Defendant's argument persuasive. The Notice is from a lawyer, and it is attempting to gather potential collective members. Further, it could give the appearance that the Court is sending the Notice and Consent forms to the potential collective members. The Court finds the sentence to be unnecessary and thus shall be removed.

### 2. Introduction

Defendant requests the first sentence of section I be deleted from the Notice because it implies Defendant is sending the notice and has admitted that potential collective members are entitled to damages. The sentence reads: "AmerCable Corporation ('Nexans AmerCable') has identified you as an individual who has worked as an hourly-paid PPE equipped lead processing employee at Defendant's El Dorado, Arkansas facility during the time period from December 19, 2020 to the present." Upon consideration, the Court agrees with Defendant. As written the language makes it appear Defendant identified the potential collective members. Thus, the first sentence shall be removed.

Defendant requests the second sentence be modified. The sentence currently reads: "You are receiving this notice because a lawsuit has been filed which seeks to recover a money judgment for unpaid wages and overtime for current and former AmerCable Corporation hourly-paid PPE equipped lead processing employees who worked at AmerCable Corporation's El Dorado, Arkansas facility." Defendant proposes the sentence be modified to read: "You are receiving this notice because a lawsuit has been filed against AmerCable alleging Fair Labor Standards Act violations relating to unpaid time spent donning and doffing personal protective gear (PPE) by Lead Press Operators." Defendant's proposed modification could potentially confuse potential collective members because of the added technical terms. Thus, Defendant's proposed modification is denied. However, in light of Defendant's argument that the sentence implies that Defendant has failed to pay wages, this sentence shall be modified to read: "You are receiving this notice because a lawsuit has been filed which seeks to recover a money judgment for alleged unpaid wages and overtime for current and former AmerCable Corporation hourly-paid PPE

equipped lead processing employees who worked at AmerCable Corporation's El Dorado, Arkansas facility." This modification adds the word "alleged" before unpaid.

Defendant requests that the fifth sentence be modified. The sentence currently reads: "The Court has not entered judgment against AmerCable Corporation at this time nor has any settlement been reached." Defendant proposes the sentence be changed to state: "The Court has not ruled or decided any of the issues, including the merits of the claims or defenses." Defendant cites to *McCoy v. Elkhart Products Corporation*, No. 5:20-CV-05176, 2021 WL 510626, at *4 (W.D. Ark. Feb. 11, 2021) in support of this change, where the Court used similar wording. The Court finds that this change is reasonable. The fifth sentence shall be changed to "The Court has not ruled or decided any of the issues, including the merits of the claims or defenses."

Defendant requests that the sixth sentence be modified to remove an errant "t" at the end of the sentence. The Court agrees this change is appropriate. The Notice shall be modified to remove the errant "t" at the end of the sentence. The Court notes that in general, any remaining typographical errors should be corrected when modifying the Notice and Consent to Join form to match the Court's changes. The parties may confer with each other about typographical error modifications if they so choose.

### 3. Footer Website Link

Plaintiff's proposed Notice contains a website located in the footer with the URL—www. nexansamericableunpaidwages.com—dedicated to the instant lawsuit. Defendant requests that the link be removed from the Notice because it is unnecessary and raises appearances of being a solicitation. Upon review of the website, the Court notes that it contains several references to hypothetical examples of FLSA situations with hypothetical damage rewards and multiple references to past cases Plaintiff's counsel litigated. The website also contains a quick

questionnaire that requires a person's name, email address, mailing address, and phone number and upon completion, states "Thanks for contacting us! We will be in touch with you shortly. Questionnaire[.]"  Further, the top of the webpage contains "This Is An Advertisement."

The Court finds that that all links to the website shall be removed from the Notice to prevent an appearance of impropriety and because the Court has no method to monitor or control the contents of the website during the time notices are being sent out.[4]  *See Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1088 (S.D. Iowa 2007) (citations omitted) (finding that links to a website should be removed if the website crosses the boundaries of propriety, including when the communications on the website are unbalanced, misleading, or factually inaccurate).

### 4. Description of the Lawsuit

Defendant requests that the entirety of section II be deleted and replaced because it is unnecessary and misleading.  However, Defendant fails to point to what information it believes to be unnecessary or misleading.  It appears to the Court that all information contained in section II is in line with Plaintiff's pleadings and contains no overtly misleading information.  Upon review, the Court declines to make this modification because Defendant's requested change is unnecessary.

### 5. Your Right to Join this Lawsuit

Defendant requests that the first sentence of section III be modified to reflect its version of Plaintiff's collective definition.  The Court agrees with this change, though it will apply the version of the collective definition the Court has found to be most accurate.  The sentence should be modified to state: "If you were employed at AmerCable Corporation's El Dorado, Arkansas facility as an hourly-paid PPE equipped lead processing employee any time from February 2022 until

---

[4]The Court notes that it is not ordering the website to be shut down, however, the website cannot be linked to a form associated with this Court in order to prevent any appearance of impropriety.

October 2023, you may join this lawsuit." Thus, the first sentence of section III shall be modified to reflect this change.

### 6. How to Join

Plaintiff requests that potential collective members be allowed to join by: (1) mail completed consent form; (2) scanning the completed consent form and emailing it to Plaintiff's attorney; or (3) faxing the completed consent form to Plaintiff's attorney. Defendant objects to the use of email and fax to return the consent forms. Defendant, however, has no objections to the use of U.S. Mail and, in addition, proposes the use of electronic signatures for completed consent forms.

There is no physical signature requirement in FLSA cases, it only requires that opt-in consent be "in writing." *See Adkinson v. Tiger Eye Pizza, LLC*, No. 4:19-CV-4007, 2019 WL 5213957, at *9 (W.D. Ark. Oct. 16, 2019) (citing 29 U.S.C. § 216(b)). "[W]e live in a time when all manner of . . . transactions are routinely cemented by electronic submission." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015); *cf.* Ark. Code Ann. § 25-32-107 (providing that an electronic signature may be used to sign a writing and has the same force and effect as a written signature). Further, the Court and other district courts within Arkansas have previously allowed the use of electronic signatures in FLSA. *See, e.g.*, *Harrison v. Hog Taxi, LLC*, No. 5:19-cv-5025-TLB, 2019 WL 4280328, at *6 (W.D. Ark. Sept. 10, 2019); *Attaway*, 2019 WL 13113724, at *5; *McChesney v. Holtger Bros.*, No. 4:17-cv-0824-KGB, 2019 WL 118408, at *6 (E.D. Ark. Jan. 7, 2019).

The Court finds Defendant's requested changes to be reasonable because U.S. Mail and electronic signature provide easily accessible options for potential collective members to sign and return the completed consent form. Thus, for the sake of simplicity, potential collective members

may either sign and physically mail the consent form to Plaintiff's counsel via U.S. Mail or they may sign the form via electronic signature.[5]  Section V should be edited to reflect these changes.

### 7. Statute of Limitations

Defendant requests that the second sentence of section VI be removed in its entirety.  The sentence in question reads: "If you choose to join this lawsuit, you may be able to recover back pay and damages (assuming that AmerCable Co[r]poration failed to pay you properly) for hours worked within two years, and, in some cases, three years."  Defendant fails to offer any argument other than the sentence would be redundant and may be misleading to potential collective members.  The Court is unpersuaded by this reasoning and finds such a change unnecessary.  However, "Coporation" shall be changed to "Corporation."  No changes are otherwise necessary to this sentence.

### D. Consent to Join Form

The Court moves now to Defendant's objections to Plaintiff's Proposed Consent to Join form.  Defendant requests that the header to the Consent to Join Form be modified to match the Proposed Notice.  The Court finds this change to be reasonable. The header of the Proposed Consent to Join form should match that of the Proposed Notice form.  This includes the changes to the case citation the Court made earlier in this Order.

Defendant requests that the "**TO:**" line should be deleted because once it is signed, "the Proposed Consent is not sent to the potential opt-in plaintiffs, it is filed with the Court, therefore, the '**TO:**' line contains inaccurate information."  The Court is unconvinced that this information is inaccurate.  However, because the Proposed Notice contains an identical "**TO:**" line there is no

---

[5]To the extent that it is necessary, the Court finds that it is reasonable for potential collective members to use email to return the electronically signed forms.

need for the Proposed Consent to Join form to repeat this. Thus, the Court finds that the "**TO:**" line should be removed from the Proposed Consent to Join form.

Defendant requests that the second sentence of the Proposed Consent to Join form be modified. The sentence currently reads: "I authorize the prosecution of this action on my behalf and on behalf of others who were employed as hourly-paid employees PPE Lead Processing Employees of AmerCable Corporation to recover unpaid wages, overtime, liquidated damages and all other relief provided under the Fair Labor Standards Act." Defendant argues that this sentence is inaccurate because the potential collective member lacks the ability to authorize the action on behalf of other individuals. Further, Defendant argues that it contains unnecessary language that has nothing to do with the intent of the form. Defendant proposes the sentence should read: "I was employed as a Lead Press Operator for Amercable Corporation, between February 2022 and October 2023 and I consent to becoming a party-plaintiff in this lawsuit." The Court agrees with the change in part. A potential collective member cannot authorize the lawsuit on behalf of other potential collective members. Thus, the Court finds the second sentence should be modified to read "I was employed or currently am employed as a lead processing employee for AmerCable Corporation between February 2022 and October 2023, and I consent to becoming a party-plaintiff in this lawsuit and authorize the prosecution of this action on my behalf."

Defendant requests that the third sentence be modified. The sentence currently reads: "I hereby agree to be bound by any judgment of the Court, any fee agreement that Named Plaintiff has entered into with counsel, and any settlement entered into in this matter by Plaintiff as my representative." Defendant argues that "any fee agreement that Named Plaintiff has entered into with counsel . . ." is misleading and implies Plaintiff's counsel is operating under a traditional contingency fee basis. Defendant further argues that because the FLSA "treats attorneys' fees as

distinct from underlying wage claims," *see Vines v. Welspun Pipes, Inc.*, 9 F.4th 849, 854 (8th Cir. 2021), the Court should modify the sentence to better clarify attorneys' fees. Defendant proposes the sentence read: "Plaintiff's attorney may negotiate their own fees with the Defendant or request the Court to award Plaintiff's attorneys' fees." While the Court is unconvinced the current sentence implies there is contingency fee agreement in place, the Court is persuaded that the sentence could be written in a more flexible manner. Thus, the Court finds the third sentence shall be removed and replaced with: "I hereby agree to be bound by any judgment of the Court and any settlement entered into in this matter by Plaintiff as my representative. Plaintiff's attorney may negotiate their own fees with Defendant or request the Court to award Plaintiff's attorneys' fees."

Finally, because Plaintiff has already filed multiple Consent to Join forms signed by potential collective members, Plaintiff should have these potential collective members sign the new Consent to Join form containing the modifications made by the Court and refile them. (ECF No. 13; ECF No. 14). *See Tremols v. Juan Barcenas Ins. & Fin. Servs.*, LLC, No. 5:21-CV-05057, 2021 WL 4896173, at *5 (W.D. Ark. Oct. 20, 2021) (ordering that consent forms that have already been filed using the removed language should be refiled using consent forms with the modified language).

In sum, the Court approves the general form and language of the proposed Consent to Join, except for the changes mentioned above.

### E. Dissemination of Notice

Plaintiff requests that the Notice to potential collective members be sent via U.S. Mail and email. Defendant objects to this and instead requests Plaintiff be limited to email. However, Defendant admits that it may not have email addresses for all potential collective members and agrees U.S. Mail could be used for those that lack email addresses. Upon consideration, the Court

sees no reason to limit Plaintiff to email.  Thus, the Court finds it reasonable to use both U.S. Mail and email to notify potential collective members in this case.  *See Clark v. Sw. Energy Co.*, No. 4:20-cv-00475, 2022 WL 993755, at *6 (E.D. Ark. Mar. 31, 2022) (Finding that the Court has routinely ordered that notices be sent via U.S. Mail and email to potential collective members).

The Court notes that all email notice dissemination must contain the following language: "The Court does not encourage or discourage participation in this case."  *See Attaway v. Hydrostatic Oil Tools, Inc.*, No. 1:19-CV-01015, 2019 WL 13113724, at *4 (W.D. Ark. Aug. 12, 2019) (requiring an identically worded judicial disclaimer provision).  This additional language will ensure that the notice "respect[s] judicial neutrality . . . [and] avoid[s] even the appearance of judicial endorsement of the merits of the action."  *Hoffmann-La Roche*, 493 U.S. at 174.

### 1. Contact Information

Plaintiff requests that the Court direct Defendant to provide the last known physical addresses, last known email addresses, dates of employment, social security numbers, and last known telephone numbers of all current and former potential collective members.  Defendant does not oppose providing the names, last known email addresses, and mailing addresses of potential collective members.  Defendant does object to providing the social security numbers, last known telephone numbers, and dates of employment of potential collective members.  Upon consideration, the Court agrees with Defendant in part.  The Court can find no reason that Plaintiff would need the social security numbers or telephone numbers of the potential collective members at this time.  Nothing in the Proposed Notice, Proposed Consent to Join form, or this Court's Order would require Plaintiff to have access to social security numbers or telephone numbers provided by Defendant.  The Court also notes that the Proposed Consent to Join form has a blank space for potential collective members to write their phone numbers if they so choose.  Thus, Plaintiff's

request for social security numbers and telephone numbers is denied. *See Cummings v. Bost, Inc.*, No. 2:14-CV-02090, 2015 WL 13655466, at *6 (W.D. Ark. Apr. 13, 2015) (finding in the interest of privacy it was unnecessary for the Defendant to disclose partial social security numbers). However, the Court directs Defendant to provide the dates of employment because this could be useful in determining if a person is eligible to join the lawsuit.

Accordingly, Defendant is directed to provide the names, last known email address, last known mailing addresses, and dates of employment of potential collective members. The Court finds it reasonable to allow Defendant fourteen (14) days from the filing of this Order to provide the information to Plaintiff. Defendant shall produce the information in a usable electronic format, such as Microsoft Word or Excel.

### 2. Public Posting of Notice

Plaintiff requests that notice be displayed prominently on any time clocks, computers, or bulletin boards used by AmerCable employees. Plaintiff also requests that notice be included with all hourly-paid protective safety geared lead processing employees' next regularly scheduled paychecks. Defendant agrees with posting notice on its bulletin boards where it currently posts legal notices. Defendant disagrees with all other methods proposed by Plaintiff. Defendant argues that posting notice at all locations requested by Plaintiff goes against the goals of notice and would create a slippery slope in the Western District of Arkansas whereby FLSA notice would become extraordinarily costly and burdensome for the defendants.

First, Plaintiff's request for notice to be posted on bulletin boards is approved. *See Lews v. Shine Solar, LLC*, No. 5:20-CV-05038, 2020 WL 4784612, at *5 (W.D. Ark. Aug. 18, 2020) (citations omitted) (Holding that "[C]ourts routinely approve request[s] to post notice in common areas or on employee bulletin boards, even if there is an alternative form of notice."). Second, the

Court agrees that posting notice on paychecks of potential collective members could be burdensome. Further, the Court is not convinced posting notice on computers would be particularly effective given that Plaintiff and potential collective members' job duties require them to don heavy duty PPE and be exposed to dangerous amounts of lead which likely limits the time they spend near computers during work hours. Thus, the Court will not approve of posting notice on paychecks or computers.

However, the Court fails to see how it would be extraordinarily costly and burdensome or create a slippery slope to post notice throughout the building in a FLSA case limited to a single facility. Accordingly, the Court approves Plaintiff's request to have notice posted on bulletin boards and time clocks. Defendant is also ordered to post notice in common areas (i.e. break rooms) used by the potential collective members at Defendant's facility.

### F. Equitable Tolling

Plaintiff requests that the statute of limitations be tolled as of the date the instant motion is granted—except for those who have already opted-in to this action—so that the statute of limitations will not run while the Consent forms are being mailed to them. Defendant contends that Plaintiffs have not met the burden for equitable tolling. Alternatively, Defendant asks the Court to withhold ruling on equitable tolling at the current time. "Plaintiffs bear the burden of demonstrating why they are entitled to equitable tolling, and the resolution of the issue is fact-specific." *Cruthis*, 2013 WL 4028523, at *5. In the instant motion, Plaintiff has not provided any justification why they should be entitled to equitable tolling other than so potential collective members will not have their statute of limitations run while the Consent forms are being sent to them in the mail. Thus, the Court will not equitably toll the statute of limitations during the time the forms are in the mail.

However, the Court notes that the "'delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance[]' justifying application of the equitable tolling doctrine.'" *Vinsant*, 2018 WL 3313023, at *5 (quoting *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)). "[P]laintiffs 'whose putative class representatives and their counsel are diligently and timely pursuing the claims should . . . not be penalized due to the courts' heavy dockets and understandable delays in rulings." *Id.* (quoting *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012)). Thus, the Court finds that it is appropriate to toll the statute of limitations from the date the instant motion was filed, June 10, 2024, until the date this Order is filed to account for the delay.

### III. CONCLUSION

For the above-stated reasons, Plaintiff's Motion to Certify Class (ECF No. 15) is hereby **GRANTED IN PART AND DENIED IN PART**. Accordingly, the Court holds as follows:

(1) This case is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b);

(2) The Court approves the Proposed Notice (ECF No. 15-2), once edited to comply with this Order;

(3) The Court approves the Proposed Consent to Join (ECF No. 15-3), once edited to comply with this order;

(4) The Court approves sending the notice packet to potential collective members via U.S. Mail and email;

(5) Defendant is hereby directed to produce the names, last known mailing addresses, last known email address, and dates of employment of any individual who meets the collective definition. The list must be produced in a usable electronic format.

Defendant shall deliver this information to Plaintiff's counsel within fourteen (14) days of the entry of this Order, with the understanding that Plaintiff's counsel is to treat this information as confidential; and

(6) Plaintiff shall have sixty (60) days from the date that Defendant delivers the requisite contact information to distribute the Notice and Consent and to file any signed Consent forms of opt-in plaintiffs with the Court.

**IT IS SO ORDERED**, this 31st day of March, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge